IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RACHEL PETE,                          )
                                      )
                Plaintiff,            )
                                      )
vs.                                   )        Case No. 15-0476-CV-W-ODS
                                      )
WALGREEN CO., SCOTT GROVES            )
and CAROL MIER,                       )
                                      )
                Defendants.           )

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. Doc. #34. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Rachel Pete ("Plaintiff") began working for Defendant Walgreen Co. ("Walgreens") in 2001. Doc. #36, at 6.[1] Plaintiff became a Store Manager in 2008. *Id.* While a Store Manager, Plaintiff reported to the District Manager, a position first held by Debra Miller ("Miller") and later by Defendant Carol Mier ("Mier") starting in May 2014. Doc. #36, at 7, 18. Defendant Scott Groves ("Groves") served as a Community Leader ("CL") for Walgreens and was assigned to Plaintiff's store throughout her tenure as a Store Manager.[2] Doc. #36, at 7.

While there is no indication of a poor relationship between Plaintiff and Groves or Miller prior to July 2013, this litigation is rooted in a July 2013 comment made by

---

[1] For ease of reference, the Court cites the ECF document number and corresponding ECF page number for each citation.

[2] A CL serves to guide and mentor Store Managers. Doc. #35, at 7. The parties dispute the supervisory authority held by the CL. Doc. #35, at 7; Doc. #36, at 8. Relevant to the Court, and not disputed, is the CL visits stores regularly to observe and report to the District Manager about the performance of Store Managers in his assigned area.

Groves. While at a Walgreens district office, Plaintiff told another manager she liked his new car, an Audi. Doc. #36, at 14. Groves overheard the comment and stated, in the presence of the other manager, Plaintiff had "a beer budget and champagne taste."[3] Doc. #35-1, at 32. Plaintiff felt disrespected and felt her gender played a role in Groves making the comment because she was the only female manager present when the comment was made. Doc. #36-1, at 15. Groves and Plaintiff discussed the comment the following day, but the parties dispute the extent to which an apology was made. Doc. #35-1, at 38.

Plaintiff's relationship with Groves deteriorated after the champagne comment. In December 2013, Plaintiff complained to Miller about Groves's rearrangement of a store display that Plaintiff believed posed a potential safety hazard. Doc. #35-1, at 40. In March 2014, Groves visited Plaintiff's store at her request to discuss her concerns that Groves was undermining her authority by assigning tasks to the Assistant Store Manager rather than working directly with her. Doc. #36-1, at 21. According to Plaintiff, Groves became angry and threatened not to help her. *Id.* Following this visit, Plaintiff complained to Miller about Groves's behavior. *Id.* at 22. Head of Loss Prevention, Joey Jaramillo ("Jaramillo"), conducted an investigation of: (1) Groves's previous champagne comment, (2) Groves's behavior during his March 2014 visit to Plaintiff's store, and (3) Plaintiff's belief that Groves was undermining her authority. Doc. #36-4, at 7. Jaramillo did not consider Groves's behavior discriminatory, but did not file a report until roughly six months later, on September 3, 2014. *Id.* at 12. In April 2014, Miller met with Groves and Plaintiff to urge them to work as a team. Doc. #35-1, at 54-55.

On June 25, 2014, Plaintiff received a Record of Discussion ("ROD")[4] from Groves for "14 overdue resets and revisions, price changes." Doc. #35-3, at 19. On July 10, 2014, Mier conducted a "growth session" with Plaintiff to discuss Mier's belief that Plaintiff blamed her team for store conditions, execution, and results.[5] Doc. #35-2,

---

[3] The Court refers to this as the "champagne comment."
[4] A Record of Discussion is a written record of a discussion between an employee and a supervisor. Doc. #35, at 13.
[5] Mier explains a "growth session" as "an opportunity to help somebody see that they have opportunity to improve in an area." Doc. #35-2, at 16. It is uncontroverted that

at 16-17.  On July 17, 2014, Groves conducted a pricing audit at Plaintiff's store following a customer complaint of incorrect prices.  Doc. #36-3, at 24; Doc. #36-10.  On July 18, 2014, Plaintiff received a ROD from Mier related to service standards and execution of pricing.  Doc. #36-9, at 4; Doc. #35-2, at 18.

On August 13, 2014, Mier spoke to her supervisor about putting Plaintiff on a Performance Improvement Plan ("PIP") due to her performance.  Doc. #35-3, at 9.  On August 30, 2014, Plaintiff emailed Mier to express concern regarding: (1) whether the two RODs were warranted, (2) her belief that Groves documented her file due to her previous complaints about his conduct, (3) her belief that Groves has "a bias against blacks or women or both," and (4) her dissatisfaction with the way her previous complaints were handled.  Doc. #35-3, at 10-11.

On September 3, 2014, Mier placed Plaintiff on a PIP.  *Id.* at 19-20.  Mier initiated the PIP "due to store condition, counts, pricing, and management/accountability of [Plaintiff's] staff."  *Id.* at 19.  On September 14, 2014, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights.[6]  Doc. #36-12.  On September 17, 2014, Walgreens received a second customer complaint about Plaintiff.  Doc. #35-3, at 29-30.  On September 18, 2014, Mier contacted the Employee Relations Department to inquire whether she must give Plaintiff the full thirty days before proceeding with further disciplinary steps.  Doc. #36-13, at 4-5.  Mier was told to give Plaintiff the full thirty day period and coach Plaintiff through the PIP process.  *Id.*

On October 6, 2014, Mier continued the PIP.  Doc. #35-3, at 5.  Groves visited Plaintiff's store multiple times in September and October, observing what he considered unacceptable store conditions.  Doc. #35-6, at 2-3.  On October 8, 2014, Jaramillo visited Plaintiff's store and identified areas of Plaintiff's store that were unsafe in his opinion.  Doc. #35-11, at 3.  On November 4, 2014, Plaintiff was discharged.  Doc. #35-1, at 61-62.

Plaintiff subsequently brought suit against Defendants in the Circuit Court of Clay County, Missouri.  Doc. #1-1.  Count I alleges Plaintiff suffered unlawful gender

---

this conversation occurred, but its significance is disputed.  Regardless, this conversation speaks to the performance issues identified by Defendants.
[6] When Defendants learned of this charge is disputed.

discrimination and hostile work environment in violation of the Missouri Human Rights Act ("MHRA").  Count II alleges Plaintiff suffered unlawful retaliation in violation of the MHRA by Defendants.  Defendants removed the action to this Court.  Doc. #1. Defendants now move for summary judgment on Plaintiff's claims for gender discrimination, hostile work environment, and retaliatory discharge.  Doc. #34.

## II.  STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## III.  DISCUSSION
### A.  COUNT I
#### (1) Gender Discrimination

Defendants move for summary judgment on Plaintiff's claim of gender discrimination under the MHRA.  It is unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of

Case 4:15-cv-00476-ODS   Document 39   Filed 08/19/16   Page 4 of 9

employment, because of such individual's...sex." Mo. Rev. Stat. § 213.055(1)(a). "Discrimination" is "any unfair treatment based on...sex...as it relates to employment...." Mo. Rev. Stat. § 213.010(5). To prevail, Plaintiff must show: (1) Defendants subjected her to an adverse employment action, (2) her sex was a contributing factor in such action, and (3) she suffered damages as a result of Defendants' actions. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007). The parties do not dispute Plaintiff suffered an adverse employment action when she was discharged.[7]

Plaintiff argues her gender contributed to her termination because: (1) she felt the champagne comment was gender-based, (2) she felt threatened as a woman during the March 2014 discussion with Groves, and (3) she was treated differently than male store managers. A "contributing factor" is a factor that "contributed a share in anything or has a part in producing the effect." *Williams v. Trans States Airlines, Inc.,* 281 S.W.3d 854, 867 (Mo. Ct. App. 2009) (internal quotation marks and citation omitted).

Plaintiff alleges the champagne comment is evidence of gender discrimination because it was made in the presence of only male employees, and the comment served as the catalyst for Groves's discriminatory treatment of Plaintiff. Groves's comment did not reference gender. Plaintiff's subjective belief that the comment referenced or was made because of her gender is insufficient to demonstrate gender discrimination. *See Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 538 (8th Cir. 2014) (citation omitted) (requiring the nonmoving party to present more than mere speculation or conjecture to survive a motion for summary judgment). Plaintiff alleges the champagne comment led to further scrutiny from Groves, but cannot demonstrate her gender contributed to increased attention she or her store received. While the March 2014 discussion between Plaintiff and Groves indicates a deteriorating relationship between the two,

---

[7] It is unclear whether Plaintiff claims the PIP is also an adverse employment action. Plaintiff's Petition does not reference a PIP as an adverse employment action, stating only "[p]laintiff's status as an employee was adversely affected...." Doc. #1, ¶ 54. The Court therefore analyzes Plaintiff's termination as the operative adverse employment action. *See Parker State Bank v. Pennington*, 9 F.2d 966, 970 (8th Cir. 1925) (stating "[t]he nature of the cause of action depends upon the facts pleaded in the complaint as a whole.").

Plaintiff's subjective belief that Groves's alleged anger or behavior was because of her gender is not evidence she was discriminated against due to her gender. *Id.*

Furthermore, Plaintiff cannot demonstrate she was similarly situated with other male store managers. The MHRA does not require Plaintiff to demonstrate she was treated differently than similarly situated employees, but doing so is one way Plaintiff can show her gender contributed to Defendants' termination decision. *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015).[8] Employees are similarly situated if they are accused of "similar conduct and are disciplined in different ways." *Id.* (citing *Williams*, 281 S.W.3d at 873).

Plaintiff points to four male store managers who received multiple RODs, yet were not discharged.[9] Doc. #36, at 39-40. Of the comparators identified by Plaintiff, only one had a ROD during the same timeframe in which Plaintiff received her two RODs. Mike Roff received one ROD related to foul language. Doc. #36-9, at 4. Unlike Roff, Plaintiff received two RODs and neither was related to foul language.

In the approximately sixteen months after Plaintiff was discharged, Mier issued several RODs to male store managers. *Id.* at 5-6. Dustin Mellinger received two RODs related to his store's net performance and employee behavior, and was placed on a PIP due to poor performance.[10] Mike Roff received two additional RODs based on his store's net performance and condition. Michael Alvarez received two RODs based on his store's net performance and employee behavior. Hillary Oyugi (a male manager) received two RODs related to store conditions and net performance. Plaintiff argues she was treated differently because these male employees were not discharged, but presents no evidence beyond the mere existence of a ROD or how these individuals improved or did not improve upon the issues identified in their respective RODs. Likewise, Plaintiff does not set forth a legal basis explaining why the Court should consider RODs and PIPs issued months or a year after she was discharged.

---

[8] Although the MHRA is not identical to federal employment discrimination laws, federal case law that is not contrary to the MHRA is applicable. *See Daugherty*, 231 S.W.3d at 819.
[9] The exact timeline of each of these RODs was not provided. Doc. #36-9.
[10] The record does not contain evidence detailing how Mellinger performed while on the PIP.

Nonetheless, Plaintiff's performance issues were more severe than the comparators' performance issues. In late June 2014, Plaintiff received a ROD from Groves for inventory and pricing issues. A couple weeks later, Mier spoke with Plaintiff because Mier believed Plaintiff did not take responsibility for the store's condition, execution, or results. One week later, Plaintiff's store received a pricing audit by Groves.[11] One day later, Plaintiff received a ROD related to service standards and execution of pricing.

After the discussions and incidents in June and July 2014, Plaintiff was placed on a PIP on September 3, 2014. While on the PIP, Walgreens received a second customer complaint regarding Plaintiff. Additionally, Groves and Jaramillo visited the store and documented what they believed were unacceptable conditions in the store. On November 4, 2014, Plaintiff was discharged.

There is no indication Plaintiff's gender contributed to Defendants' decisions. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claim of gender discrimination under the MHRA.

### (2) Hostile Work Environment Based on Gender

Defendants also move for summary judgment on Plaintiff's claim for sexual harassment resulting in a hostile work environment. A hostile work environment exists "when sexual conduct either creates an intimidating, hostile or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." *Barekman v. City of Republic*, 232 S.W.3d 675, 679 (Mo. Ct. App. 2007) (citation omitted). To prevail on this claim, Plaintiff must prove: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; and (4) a term, condition, or privilege of her employment was affected by the harassment.[12] *Hill v. Ford Motor Co.*,

---

[11] This pricing audit was administered following a customer complaint that prices in Plaintiff's store were consistently wrong.

[12] The parties disagree on whether Plaintiff must prove whether Walgreens knew or should have known of the harassment and failed to take appropriate action. This element is required when the alleged harasser is a co-worker, but is not required when the alleged harasser is a supervisor. *Compare Barekman*, 232 S.W.3d at 679 *with Hill*,

277 S.W.3d 659, 666 (Mo. banc 2009). The conduct must be sufficiently hostile as it was subjectively viewed by Plaintiff and as it would be objectively viewed by a reasonable person. *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 245 (Mo. Ct. App. 2006). The objective hostility of a work environment is measured by the "totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Watson v. Heartland Labs., Inc.*, 790 F.3d 856, 862 (8th Cir. 2015) (citation omitted).

Although Plaintiff is a member of a protected class, she cannot demonstrate she was subjected to unwelcome sexual harassment that resulted in a hostile work environment. Plaintiff bases her claim on three incidents: (1) Groves's champagne comment, (2) the March 2014 discussion between Groves and Plaintiff, and (3) Plaintiff's August 30, 2014 email to Mier stating "Scott Groves is disrespectful towards me to the point that I can't help but think he either has a bias against blacks or women or both."

While Groves's champagne comment was unwelcome, the comment was not sexual in nature and Plaintiff's subjective belief the comment made vague reference to her gender is insufficient to establish unwelcome sexual harassment. Additionally, there is no evidence of sexual harassment occurring during the March 2014 discussion between Groves and Plaintiff. As with Groves's champagne comment, Plaintiff's subjective view of the situation is insufficient when there is no evidence Groves made sexual contact, advances, or references in Plaintiff's presence. Finally, Plaintiff's August 2014 email simply detailed her feelings and is not evidence of sexual harassment by Defendants. Plaintiff merely demonstrates she and Groves had a poor working relationship, but cannot show sexual harassment. Accordingly, the Court

---

277 S.W.3d at 666. Plaintiff argues this element is inapplicable because Groves is a supervisor. Defendants argue Plaintiff fails to meet this element because Walgreens investigated Plaintiff's complaints and took appropriate action. The Court need not determine whether Groves was a supervisor because Plaintiff cannot meet the initial requirements to demonstrate a hostile work environment.

grants Defendants' motion for summary judgment on Plaintiff's hostile work environment claim.

## B. COUNT II

Count II alleges Defendants retaliated against Plaintiff. Under the MHRA, it is unlawful to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by [the MHRA] or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to [the MHRA]." Mo. Rev. Stat. § 213.070(2). To establish a prima facie case of retaliation, one must show: (1) she complained of discrimination, (2) she suffered an adverse employment action, and (3) the adverse employment action was causally linked to the discrimination complaint. *McCrainey v. Kansas City Missouri Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011) (citation omitted). A plaintiff must prove her opposition to unlawful discrimination was a "contributing factor" in her employer's adverse employment action. *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011) (citations omitted). The Court finds summary judgment is not appropriate because there are genuine issues of material fact regarding whether Defendants unlawfully retaliated against Plaintiff. The Court therefore denies Defendants' motion as to Count II.

## IV. CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is granted as to Count I of Plaintiff's Petition and denied as to Count II of Plaintiff's Petition.


IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 19, 2016                 UNITED STATES DISTRICT COURT

9